**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

DINA W.,

               Plaintiff,

                                 1:24-cv-1128
    v.                                (DJS)

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

_____

**APPEARANCES:**                   **OF COUNSEL:**

LEGAL SERVICES OF       MARY G. FERONE, ESQ.
THE HUDSON VALLEY
Attorney for Plaintiff
90 Maple Avenue
White Plains, New York 10601

U.S. SOCIAL SECURITY ADMIN.    FERGUS J. KAISER, ESQ.
Attorney for Defendant
6401 Security Boulevard
Baltimore, Maryland 21235

**DANIEL J. STEWART**
**United States Magistrate Judge**

### <u>MEMORANDUM DECISION AND ORDER</u>[1]

     Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a

decision by the Commissioner of Social Security that Plaintiff was not disabled.  Dkt.

---

[1] Upon Plaintiff's consent, the United States' general consent, and in accordance with this District's General Order, this matter has been referred to the undersigned to exercise full jurisdiction pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Dkt. Nos. 4 & 17; General Order 18.

No. 1.  Currently before the Court are Plaintiff's Motion for Judgment on the Pleadings and Defendant's Motion for Judgment on the Pleadings.  Dkt. Nos. 15 & 16.  For the reasons set forth below, Plaintiff's Motion for Judgment on the Pleadings is denied and Defendant's Motion for Judgment on the Pleadings is granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born in 1972.  Dkt. No. 8, Admin. Tr. ("Tr.") at pp. 237, 254, & 277.  She has at least a twelfth-grade education.  Tr. at p. 231.  She has not worked at all in the last fifteen years before she became unable to work.  *Id.*  Plaintiff alleges disability based on anxiety, bulging discs, PTSD, and stage 1 breast cancer.  Tr. at p. 230.

### B. Procedural History

Plaintiff applied for supplemental security income on February 22, 2022.  Tr. at pp. 91 & 106.  She alleged a disability onset date of July 1, 2021.  *Id.*  Plaintiff's application was initially denied on May 6, 2022.  Tr. at pp. 124-27.  Reconsideration was denied on January 20, 2023, Tr. at pp. 136-38, after which Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. at p. 143.  Plaintiff appeared at a hearing before ALJ Vincent Cascio on June 21, 2023, at which Plaintiff and a vocational expert testified.  Tr. at pp. 37-69.  On October 10, 2023, the ALJ issued a written decision finding Plaintiff was not disabled.  Tr. at pp. 17-31.  On July 24, 2024,

the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. Tr. at pp. 1-6.

### C. The ALJ's Decision

In his decision, the ALJ made the following findings of fact and conclusions of law. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of February 22, 2022. Tr. at p. 19. Second, the ALJ found that Plaintiff has the following severe impairments: malignant neoplasm of the left breast, status-post lumpectomy; lymphedema of the left breast; cervical disc disorder; and fibromyalgia. *Id.* Third, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. at p. 21. Fourth, the ALJ found that Plaintiff had the residual functional capacity to perform light work, except that:

> she can occasionally climb ramps and stairs; can never climb ropes, ladders or scaffolds; can occasionally stoop, crouch and kneel, but can never crawl. She must avoid exposure to unprotected heights or hazardous machinery. [She] can occasionally reach, including overhead reaching with the left upper extremity.

Tr. at p. 22. Fifth, the ALJ found that Plaintiff was unable to perform any past relevant work. Tr. at p. 29. Sixth, the ALJ found that Plaintiff "was born on March 15, 1972 and was 49 years old, which is defined as a younger individual age 18-49, on the date the application was filed," but that she "subsequently changed age category to closely approaching advanced age." Tr. at p. 30. Seventh, the ALJ found that Plaintiff has at

3

least a high school education. *Id.* Next, the ALJ found that transferability of job skills was "not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [Plaintiff] is 'not disabled,' whether or not the [Plaintiff] has transferable job skills." *Id.* The ALJ then determined that, based on Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. Tr. at pp. 30-31. The ALJ, therefore, concluded that Plaintiff was not under a disability at any time since February 22, 2022, the date the application was filed. Tr. at p. 31.

## II. RELEVANT LEGAL STANDARDS

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v.*

4

*Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

## B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. §§

404.1520, 416.920.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.  Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

### III. ANALYSIS

Plaintiff raises three claims of error for review in this proceeding.  First, Plaintiff argues that the ALJ erred "by finding that Plaintiff did not suffer from severe mental impairment."  Dkt. No. 15, Pl.'s Mem. of Law at pp. 4-8.  Second, Plaintiff asserts that

the ALJ erred "in that he did not apply the required regulatory standard when evaluating the medical evidence in the record," which Plaintiff contends yielded a decision denying Plaintiff benefits that "is not based upon substantial evidence." *Id.* at pp. 8-12. Third, Plaintiff claims that the ALJ failed to consider all evidence regarding Plaintiff's credibility. *Id.* at pp. 13-17. Defendant responds that "[t]he ALJ properly found that medical records from the relevant period, as well as the medical opinions and prior administrative medical findings, failed to substantiate Plaintiff's claims of disabling limitations, and properly incorporated these findings into the residual functional capacity," and asserts that substantial evidence supports the ALJ's decision. Dkt. No. 13, Def.'s Mem. of Law.

**A. Mental Impairment**

The ALJ determined that Plaintiff has the following severe impairments: malignant neoplasm of the left breast, status-post lumpectomy; lymphedema of the left breast; cervical disc disorder; and fibromyalgia. Tr. at p. 19. Notably omitted is a finding that Plaintiff suffers from severe mental impairment. *See id.* Plaintiff argues that the ALJ erred "by finding that Plaintiff did not suffer from severe mental impairment" because, according to Plaintiff, "[t]he record supports a finding that [Plaintiff]'s depression and anxiety is severe." Pl.'s Mem. of Law at pp. 4-8. In particular, Plaintiff takes issue with the ALJ's reliance on the opinions of consultative examiners Alison Murphy, Ph.D. ("Dr. Murphy"), and Ruby Phillips, Ph.D. ("Dr.

Phillips"), as well as the ALJ's characterization of Plaintiff's treatment. *Id.* The Court is not persuaded by Plaintiff's arguments.

First, Plaintiff notes that Drs. Murphy and Phillips are consultative examiners who "spen[t] less than one half hour" with Plaintiff. *Id.* at p. 6. However, the mere fact that Drs. Murphy and Phillips are consultative examiners "is not enough to discredit their opinions." *Wettlaufer v. Colvin*, 203 F. Supp. 3d 266, 279 (W.D.N.Y. 2016). "To the contrary, the opinion of a consultative examiner may constitute substantial evidence supporting an ALJ's decision." *Id.* (citing *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) and *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983)). Moreover, "the opinion of a treating physician is not binding if it is contradicted by substantial evidence, . . . and the report of a consultative physician may constitute such evidence." *Mongeur v. Heckler*, 722 F.2d at 1039. Thus, the opinions of Drs. Murphy and Phillips are not deficient merely because they are consultative examiners.

Second, Plaintiff complains that Drs. Murphy and Phillips did not note that they reviewed Plaintiff's mental health records or other medical records, which Plaintiff alleges indicate that she was suffering from depression and anxiety, Pl.'s Mem. of Law at p. 6, but there is no requirement for consultative examiners to do so, nor is the Commissioner even required, in every case, to provide a consultative examiner with a claimant's medical records. *See Keith L. v. Comm'r of Soc. Sec.*, 2021 WL 2809551, at *4 (W.D.N.Y. July 6, 2021) (citing cases); *see also* 20 C.F.R. § 404.1519n(c)(1)-(7)) (listing the elements of a complete consultative examination, none of which require that

the consultative examiner review the entire record).  Thus, the opinions of Drs. Murphy and Phillips are not deficient merely because they did not note that they reviewed Plaintiff's medical records.

Third, Plaintiff takes issue with the ALJ's characterization of Plaintiff's mental health treatment as "conservative," which Plaintiff assumes is "because she has not had an inpatient hospitalization, but rather psychotherapy." Pl.'s Mem. of Law at p. 7 (citing Tr. at p. 20).  Placed in context, the ALJ stated that the opinions of Drs. Murphy and Phillips "are consistent with each other, [Plaintiff]'s conservative treatment history and the activities of daily living including the ability to shop, drive, manage finances, socialize at parties, cook, prepare meals, and perform self-care." Tr. at p. 20 (citing Tr. at pp. 239-51, 458-69, & 1087-214).  While Plaintiff takes issue with the ALJ's characterization of her treatment as conservative, courts in the Second Circuit "have specifically recognized that a pattern of conservative medical treatment, such as mental health treatment with medication and therapy but not in-patient or hospitalization care, is a proper factor for an ALJ to consider." *Thomas v. Comm'r of Soc. Sec. Admin.*, 479 F. Supp. 3d 66, 89 (S.D.N.Y. 2020) (quotation, internal quotation marks, and citation omitted) (cleaned up).  Thus, even assuming—notwithstanding the fact that Plaintiff has not pointed to any proof in the record in support—that the ALJ characterized Plaintiff's treatment as conservative based on the fact that Plaintiff engaged in psychotherapy but did not require impatient hospitalization, the Court finds no error by the ALJ.

9

Fourth, with regard to Plaintiff's alleged mental impairment, Plaintiff lastly argues that the ALJ incorrectly found that Plaintiff does not take psychiatric medication and asserts that Plaintiff was taking Effexor for anxiety.  Pl.'s Mem. of Law at p. 7.  Defendant responds that "Plaintiff neglects to note that Effexor was prescribed to treat 'side effects of all the cancer medications.'"  Def.'s Mem. of Law at p. 7 (quoting Tr. at p. 49).  At the hearing, the ALJ inquired as to what medications Plaintiff was taking, and while Plaintiff noted that she was taking Effexor and that it is an antianxiety medication, she stated that "it was originally started for the side effects of all the cancer medications."  Tr. at p. 49.  This is also consistent with Plaintiff's treatment notes, which state that Plaintiff was taking "Effexor 37.5 mg for hot flashes (in forced menopause)," Tr. at pp. 1125 & 1129, and that her hot flashes were "modified somewhat through the use of . . . Effexor."  Tr. at p. 667.  As a result, Plaintiff has not shown that the ALJ erred in his recitation of the record.

Accordingly, Plaintiff has not pointed to a reversible error attendant to the ALJ's conclusion that Plaintiff did not suffer from severe mental impairment.

### B. Regulatory Standard

Plaintiff also asserts that the ALJ erred "in that he did not apply the required regulatory standard when evaluating the medical evidence in the record," which Plaintiff contends yielded a decision denying Plaintiff benefits that "is not based upon substantial evidence."  Pl.'s Mem. of Law at pp. 8-12.  More specifically, Plaintiff takes issue with the ALJ finding "all of [Plaintiff]'s treating providers unpersuasive" because "they have

10

similar conclusions and have significant history with [Plaintiff]," *id.* at p. 10, and argues that the ALJ's "elective and unexplained weighing of the medical opinions . . . violates the principle against cherry-picking." *Id.* at p. 11 (quotation, internal quotation marks, and citation omitted).[2]

Here, Plaintiff draws the Court's attention to the ALJ's discussion of Nurse Practitioner Marie De La Parte ("NP De La Parte"). *Id.*  Plaintiff notes that, on one hand, the ALJ discredited NP De La Parte "when she opines that [Plaintiff] cannot stand for extended periods of time and recommends an aid to assist her with daily activities," *id.* (citing Tr. at p. 82), and dismissed her opinion limiting Plaintiff's activities as "inconsistent with the record" while "fail[ing] to make any specific reference to the same." *Id.* (citing Tr. at p. 26).  On the other hand, however, Plaintiff states that the ALJ referenced NP De La Parte's notes that Plaintiff is "neurologically intact" and that her "ranges of motion were within normal limits." *Id.* (quoting Tr. at p. 26) (internal quotation marks omitted).

"Cherry-picking is inappropriately crediting evidence that supports administrative conclusions while disregarding offering evidence from the same source, and is not permitted." *Wendy L. K. v. Comm'r of Soc. Sec.*, 2025 WL 1089519, at *5 (N.D.N.Y. Jan. 27, 2025) (quotation and internal quotation marks omitted), *report and*

---

[2] In this section of her brief, Plaintiff also discusses the opinions of: Kyle Denniston, M.D. ("Dr. Denniston"); and Samantha Mannese, M.D. ("Dr. Mannese").  *See* Pl.'s Mem. of Law at p. 12.  However, in briefly and summarily discussing the opinions of Drs. Denniston and Mannese, Plaintiff does not make any allegations that the ALJ erred with regard to his analysis of these opinions.  *See generally id.*  As such, the Court finds that Plaintiff did not meet her burden of establishing an error of law warranting remand in the ALJ's application of the required regulatory standards to the opinions of Drs. Denniston and Mannese.

11

*recommendation adopted sub nom. Wendy K. v. Comm'r of Soc. Sec.*, 2025 WL 679328 (N.D.N.Y. Mar. 4, 2025). "An allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence, and what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Id.* (quotations and internal quotation marks omitted).

While "[t]he ALJ cannot ignore evidence or cherry pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence, . . . [t]hat does not appear to be the case here where the ALJ performed a detailed review of the evidence." *Casey Patricia S. v. Saul*, 2019 WL 6134414, at *7 (N.D.N.Y. Nov. 19, 2019) (quotation, internal quotation marks, and citations omitted). The ALJ's decision discusses in detail NP De La Parte's findings. *See* Tr. at pp. 24 & 26. The ALJ noted that, in February 2022, NP De La Parte:

> provided a Medical Examination For Employability Assessment, Disability Screening opinion, in which she indicated that [Plaintiff], diagnosed with fibromyalgia, Malignant Neoplasm Breast and cervical disease, can ambulate unassisted; but has limited strength and endurance and cannot stand for long periods and recommend an aide to assist her with activities of daily living.

Tr. at p. 26. However, the ALJ discredited NP De La Parte's conclusions, explaining as follows:

> Rendered for another government program with different standards of disability, the opinion is not persuasive. Additionally, it is not supported by or consistent with treatment notes from April 2022 demonstrating that claimant was neurologically intact with good strength, intact grip and sensation, 2+ reflexes and neck ranges of motion that were within normal

limits without spasm or tenderness . . . or the claimant's normal 2023 general examination.

*Id.* The ALJ made a similar finding with regard to NP De La Parte's May 28, 2022 opinion that Plaintiff is "moderately limited in walking and using her hands; [v]ery limited in her ability for lifting/carrying and pushing/pulling/bending; very limited in her ability to function in a work setting at a consistent pace; [and] moderately limited in her ability to maintain[] attention/concentration," *id.* (citation and internal quotation marks omitted), stating:

> The opinions are not supported by or consistent with the longitudinal perspective provided by treatment notes from demonstrating treatment related fatigue and restricted motion to the left upper extremity, which has continued to improve. Nor are they consistent with or supported by the claimant's activities of daily living which have encompassed increasing socialization, exercise, household chores or her intact mental status findings. Additionally, the statement regarding "no work at this time," is inherently neither valuable nor persuasive.

*Id.* Finally, the ALJ continued this same analysis with regard to NP De La Parte's September 2022 opinion. *Id.* The ALJ discussed NP De La Parte's findings regarding how Plaintiff's cancer treatment exacerbated her symptoms and limitations. *Id.* The ALJ also explained why he found this opinion not to be persuasive, including because the extreme limitations opined by NP De La Parte were neither supported by NP De La Parte's own treatment notes nor supported by or consistent with progress notes from other providers demonstrating significant improvement," which are then discussed in detail by the ALJ in the decision. Tr. at pp. 26-27. "Rather than cherry picking the record, this is consistent with the ALJ's obligation to consider and resolve conflicts in

13

the record." *Donald P. v. Comm'r of Soc. Sec.*, 2023 WL 9284292, at *4 (N.D.N.Y. Dec. 20, 2023) (citation omitted), *report and recommendation adopted*, 2024 WL 166840 (N.D.N.Y. Jan. 16, 2024).  Plaintiff's contention that the ALJ engaged in improper cherry-picking with regard to the opinion of NP De La Parte thereby fails.

Having established that the ALJ did not violate the principle against cherry-picking in analyzing the opinion of NP De La Parte, *see supra*, the Court addresses Plaintiff's additional complaint:

> [The ALJ] states notes say that [Plaintiff] is "neurologically intact" and "range of motion were within normal limits without spasm or tenderness." These are medical conclusions being made by a non- medical professional. The ALJ is not trained to know whether the inability to stand has anything to do with being "neurologically intact," and regarding [Plaintiff]'s "range of motion," there is no mention of what range of motion that is and whether it is in fact related to the ability to walk or stand.

Pl.'s Mem. of Law at p. 11 (citing Tr. at p. 26).  While it is true that ALJs cannot arbitrarily substitute their own judgment for competent medical opinion, that is not what the ALJ did here.  *See Batease v. Berryhill*, 2017 WL 1102659, at *8 (D. Vt. Mar. 24, 2017).  Instead, the ALJ's decision demonstrates that, in stating that Plaintiff "was neurologically intact" and had "neck ranges of motion that were within normal limits," the ALJ was not making medical conclusions, but rather was referencing NP De La Parte's progress notes for Plaintiff from April 2022.  Tr. at pp. 24 & 26 (citing Tr. at p. 383).  NP De La Parte's progress notes state that, with regard to "[n]euro," Plaintiff was "[a]lert and oriented x3" and that "[a]chilles and patellar DTRs," meaning deep tendon reflexes, "are brisk and symmetrical."  Tr. at p. 383.  Additionally, NP De La Parte

14

observed that Plaintiff's neck "ROM," meaning range of motion, was "WNL," meaning within normal limits, as to the "anterior posterior," "[r]otatory," and "[s]ide to side." *Id.* Thus, the ALJ's opinion "was not based on the ALJ's own judgment of the medical evidence, but rather on the medical evidence itself." *Batease v. Berryhill*, 2017 WL 1102659, at *8.

Accordingly, the ALJ neither engaged in improper cherry-picking nor substituted his own judgment for that of competent medical opinion, but rather properly analyzed the opinion of NP De La Parte and supported his findings regarding that opinion with substantial evidence in the record.

### C. Evidence Regarding Credibility

The ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. at p. 23. Plaintiff challenges this credibility assessment and argues that the ALJ failed to consider all evidence regarding Plaintiff's credibility by mischaracterizing Plaintiff's daily activities and abilities and not considering the statement provided by Plaintiff's home health aide, Sulka Sono-Knowles. Pl.'s Mem. of Law at pp. 13-17.

As a preliminary matter, and contrary to what Plaintiff seems to assert, "[t]he ALJ is not required to accept the claimant's subjective complaints without question; [rather,] he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Michael M. v. Comm'r of Soc.*

15

*Sec.*, 2022 WL 22210127, at *8 (N.D.N.Y. Sept. 26, 2022) (quotations and internal quotation marks omitted) (alteration in original).  "These credibility findings are entitled to great deference and therefore can be reversed only if they are patently unreasonable." *Id.* (quotations and internal quotation marks omitted).  For the reasons explained in more detail below, the Court disagrees with Plaintiff and finds that the ALJ properly considered Plaintiff's own conflicting statements regarding her daily activities and other substantial evidence to assess Plaintiff's credibility, and thus finds no basis for remand.

*1. Statements Regarding Plaintiff's Daily Activities and Abilities*

Plaintiff complains that the ALJ made "blanket statements that are considered in isolation," "grossly exaggerated [Plaintiff]'s daily activities and abilities," and "ignore[d] and mischaracterize[d] [Plaintiff]'s testimony about her daily activities." Pl.'s Mem. of Law at p. 14.  In support of this argument, Plaintiff notes the following examples: the ALJ stated that Plaintiff "can manage her finances," *id.* (citing Tr. at p. 21), but Plaintiff "testified . . . that her aid assists her with paying bills and other paperwork," *id.* (citing Tr. at p. 57); the ALJ stated that Plaintiff can cook and clean, *id.* (citing Tr. at p. 57), but Plaintiff said "she does a little bit," *id.* (citing Tr. at p. 51); and the ALJ stated that Plaintiff can drive, but Plaintiff can drive for twenty minutes.  *Id.* (citing Tr. at p. 25).  Plaintiff also notes that she "testified in detail about the pain that average tasks cause her" and the other symptoms she experiences.  *Id.* (citing Tr. at pp. 52, 55-56, & 58-60).

16

First, with regard to finances, the ALJ stated that Plaintiff has been able to manage her money and finances. *See id.* (citing Tr. at pp. 458-69 & 1087-214); Tr. at pp. 20-21 (citing Tr. at pp. 239-51, 458-69, 1073-76, & 1087-214). The ALJ supported this statement by referencing, among other things: the function report, Tr. at pp. 20-21 (citing, among other portions of the record, Tr. at pp. 239-51), which states that Plaintiff is able to pay bills, count change, handle a savings account, and use a checkbook/money orders, and that her ability to handle money has not changed since her illness, injuries, or conditions began, Tr. at pp. 246 & 270; the psychiatric evaluation of Dr. Murphy, Tr. at pp. 20-21 & 24 (citing, among other portions of the record, Tr. at pp. 458-69), which states that Plaintiff "can manage money," Tr. at p. 460; and the psychiatric evaluation conducted by Dr. Phillips, Tr. at pp. 20-21 & 24 (citing, among other portions of the record, Tr. at pp. 1073-76), which states that Plaintiff "is able to manage her own money." Tr. at p. 1075. Relatedly, the ALJ also noted that "[m]ental health therapy records reflect that . . . from 2022 into 2023, [Plaintiff] was able to make a movie, which she submitted to an old colleague and showed to others, while making plans to travel [to] LA in order to raise the money and have it produced." Tr. at p. 24 (citing Tr. at p. 1089). Other portions of Plaintiff's mental health therapy records also discuss that, in relation to the movie that Plaintiff made, Plaintiff "got [accepted] by a fiscal sponsorship" and "people can donate money thru them to me to [produce] this movie." Tr. at p. 1122. As such, the ALJ's statements regarding Plaintiff's ability to manage her finances are supported by substantial evidence in the record.

17

Second, with regard to cooking and cleaning, while the ALJ stated that Plaintiff can cook and prepare meals, Tr. at pp. 20-21, 24, & 27-29, the ALJ noted that Plaintiff "prepares her own simple meals, subject to physical restriction," Tr. at p. 21; *see also* Tr. at pp. 27-29, and acknowledged that "[s]he does limited food preparation . . . and limited shopping, as her home health aide assists with these tasks." Tr. at p. 25. Similarly, while the ALJ stated that Plaintiff can clean, Tr. at pp. 21 & 24, the ALJ described Plaintiff's cleaning abilities as "limited," Tr. at p. 25, and "light," Tr. at pp. 20 & 27-29, and explained that Plaintiff does "limited cleaning . . . [and] limited laundry" because Plaintiff's "home health aide assists with these tasks" as well. Tr. at p. 25. As such, the Court finds no error in the ALJ's statements regarding Plaintiff's ability to cook and clean.

Third, with regard to Plaintiff's driving abilities, the ALJ recognized that NP De La Parte and Dr. Denniston opined that Plaintiff is unable to drive herself. Tr. at pp. 26-27. However, the ALJ found these opinions inconsistent with the fact that, as of June 15, 2022, Plaintiff was able to drive alone to her session. Tr. at pp. 24-25 & 27-29 (citing Tr. at p. 411). Notably, while the ALJ stated that Plaintiff "is able to drive," he acknowledged that it is "with pain." Tr. at pp. 24-25. These findings are supported by Plaintiff's testimony at the hearing, wherein she stated that she was able to drive "[a] little bit," estimated that she could drive for approximately twenty minutes, and indicated that she had driven as recently as the day prior to get to her acupuncture appointment, which is twenty minutes away, Tr. at pp. 43 & 56-57, as well as other

18

portions of the record wherein Plaintiff indicated that she is able to drive, but with pain. *See*, *e.g.*, Tr. at pp. 908, 1075, & 1179.  Thus, the ALJ's statements regarding Plaintiff's ability to drive are supported by substantial evidence in the record and the Court finds no error.

Accordingly, the ALJ did not err in his discussion of Plaintiff's daily activities and abilities, and the ALJ's statements regarding Plaintiff's ability to manage her finances, cook, clean, and drive are supported by substantial evidence.

### 2. Plaintiff's Home Health Aide

Plaintiff also alleges that, while "[t]he ALJ must consider all evidence of record," Pl.'s Mem. of Law at p. 13 (citation omitted), the ALJ "does not even consider" and "fails to evaluate or even mention in his decision the third-party statement" from Plaintiff's "home health aide," Sulka Sono-Knowles. *Id.* at p. 15 (citing Tr. at p. 288). Plaintiff further explains that Ms. Sono-Knowles works for Plaintiff "three days a week (16 hours) to help her with daily and weekly tasks," including "groceries and other errands, cooking, dishes, vacuuming, other household chores[,] and transportation," as well as "fill[ing] out forms" and "typ[ing] emails for her." *Id.*  According to Plaintiff, in her statement, Ms. Sono-Knowles writes that Plaintiff's "fatigue, pain, and mental strain restrict all her activities," and Plaintiff alleges that these statements are consistent with Plaintiff's "description of her pain, fatigue[,] and resulting limitations," *id.* (citing Tr. at p. 288), and "corroborate[] [her] subjective allegations." *Id.* at p. 17.

In response, Defendant asserts:

19

> ALJ's "are not required to articulate how [they] considered evidence from nonmedical sources."   20 C.F.R. § 416.920c(d); *see also* 20 C.F.R. § 416.902(a) (home health aide not included in list of acceptable medical sources); *Michelle F. o/b/o I.M.U. v. Comm'r of Soc. Sec.*, No. 21-cv-0350-DEP, 2022 WL 4482756, at (N.D.N.Y. Sept. 27, 2022) ("Given that there is no indication that those sources were medical sources, there was therefore no requirement for the ALJ to explain how she considered this statement.").

Def.'s Mem. of Law at p. 13.

Initially, the Court notes that the relevant statutes "require . . . that the ALJ 'consider' third-party statements but do not contain any *articulation* requirements." *Alan C. v. Comm'r of Soc. Sec.*, 2024 WL 3715774, at *6 (N.D.N.Y. Aug. 8, 2024) (citing SSR 16-3p and § 416.929) (emphasis added).   Thus, in order to show that evidence was considered, an ALJ need not discuss or cite every piece of evidence.  *See Kevin A. R. v. Kijakazi*, 2022 WL 18587763, at *11 (N.D.N.Y. Nov. 9, 2022), *report and recommendation adopted sub nom. Kevin R. v. Comm'r of Soc. Sec.*, 2023 WL 196049 (N.D.N.Y. Jan. 17, 2023) (citing *Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012)).  Further, "in the absence of notable error or lack of substantial evidence in support, '[a]n ALJ's evaluation of a social security claimant's subjective symptoms is entitled to substantial deference by a reviewing court.'" *Alan C. v. Comm'r of Soc. Sec.*, 2024 WL 3715774, at *6 (quotation, internal quotation marks, and citations omitted).

Here, the ALJ did not refer to Ms. Sono-Knowles by name and did not specifically refer to or cite to her statement in the decision.  *See generally* Tr. at pp. 17-

31.  However, standing alone, this does not rise to the level of notable error because, as previously discussed, the statutes "do not contain any articulation requirements." *Alan C. v. Comm'r of Soc. Sec.*, 2024 WL 3715774, at *6. Notably, the ALJ did recognize that Plaintiff has a home health aide as well as the services that Plaintiff's home health aide renders, stating: "[Plaintiff] does limited food preparation, limited cleaning, limited laundry, and limited shopping, as her home health aide assists with these tasks." Tr. at p. 25. The Court appreciates that, in making this statement, the ALJ does not provide a citation to the record, and thus it is not clear whether the ALJ based this statement on Ms. Sono-Knowles' statement (Tr. at p. 288), Plaintiff's testimony at the hearing (Tr. at pp. 43, 51-52, & 57), or another portion of the record. In any event, the Court does not find that Plaintiff has pointed to sufficient evidence supporting her assertion that the ALJ did not *consider* Ms. Sono-Knowles' statement, and will not make that finding here based solely on Plaintiff contending that the ALJ did not *articulate* that consideration expressly in the decision, particularly given: the ALJ's recognition of the fact that Plaintiff had a home health aide, Tr. at p. 25; the guiding principle that the "ALJ's evaluation of [Plaintiff's] subjective symptoms is entitled to substantial deference," *Alan C. v. Comm'r of Soc. Sec.*, 2024 WL 3715774, at *6; and the Court's finding, for all the reasons previously discussed, that the ALJ's decision with regard to Plaintiff's daily activities and abilities is supported by substantial evidence here. *See supra* at pp. 16-19.

21

## IV. CONCLUSION

**ACCORDINGLY**, it is

**ORDERED**, that Plaintiff's Motion for Judgment on the Pleadings is **DENIED**; and it is further

**ORDERED**, that Defendant's Motion for Judgment on the Pleadings is **GRANTED**; and it is further

**ORDERED**, that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED** and the Complaint is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court shall serve copies of this Memorandum-Decision and Order on the parties.

Dated:  March 20, 2026
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

22